IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**BLUE CROSS, BLUE SHIELD OF**
**MISSISSIPPI A MUTUAL INSURANCE**
**COMPANY**                                                                                    **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO. 3:13cv655-HTW-LRA**

**GOVERNOR PHIL BRYANT, in his**
**Capacity as Governor of the State of**
**Mississippi**                                                                                          **DEFENDANT**

## Governor Phil Bryant's Court-Requested Reply

**I.      Eleventh Amendment and this Court's jurisdiction.**

The Commissioner and BCBS contend that the Governor lacks authority under state law, is usurping the authority of another state official, and is otherwise misinterpreting or misapplying state law. But, the Eleventh Amendment deprives this Court of jurisdiction to determine whether a state official is complying with state law. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984)("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"); *Hughes v. Savell*, 902 F.2d 376 (5th Cir.1990)("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the state" and barred by the Eleventh Amendment). Per the Fifth Circuit:

> The district court noted that while it was "likely" that the Board regulations . . . were contrary to the Mississippi statutes regulating engineer licensure, it was without jurisdiction to impose its view of the state law on the state agency under *Pennhurst* []. The district court was again correct.

*Leland v. Mississippi State Bd. of Registration*, 103 F.3d 126, *2 (5th Cir.1996). Directly on point, the plaintiff in *Cmty. Mental Health Servs. of Belmont* claimed that a state

agency was depriving it of its "liberty and property interests in its business" because the agency lacked authority under state law to investigate grievances filed against plaintiff. 395 F. Supp. 2d 644, 652-53 (S.D. Ohio 2004), *aff'd sub nom.*, 150 F. App'x 389 (6th Cir.2005).  The court concluded that determining whether the agency had authority to investigate "would require this Court to both interpret Ohio law and determine whether a state agency is complying with state law. The Eleventh Amendment precludes this Court from doing so." *Id*.  Succinctly stated: "This Court does not have jurisdiction to determine the scope of authority that Ohio's legislature intended to bestow upon ODMH, a state agency." *Id*.[1]

Further, in instances in which the Eleventh Amendment did not bar

---

[1] Although beyond this Court's jurisdiction, the Executive Order recites the Governor's authority to enforce state laws.  *See* Executive Order 1327 at 4-5 (citing Miss. Const. art. 5, § 116 ("chief executive power of this state shall be vested in a Governor); § 123 ("shall see that the laws are faithfully executed"); *Vicksburg & M.R. Co. v. Lowry*, 61 Miss. 102, 104 (1883)("duty to see that the laws are faithfully executed. The power of the State is at his command for this purpose."); Miss. Code Ann. § 7-1-5(d)-(e)("supervise the official conduct of all executive and ministerial officers"); Miss. Code Ann. § 7-1-5(k)("require any officer . . to make special reports to him"). BCBS has cited no contrary authority.  Counsel for the Commissioner, *in his former role as counsel for then Governor Haley Barbour*, successfully argued to the Mississippi Supreme Court that the Governor could interfere with the Attorney General's authority to settle lawsuits.
> This Court has stated the following about the Governor's powers: The constitutional and statutory provisions requiring the Governor to see that the laws are executed have no obscure or technical meaning; neither were they intended as a mere verbal adornment of his office ... they mean what is in the ordinary import of the language used, to-wit, that the laws shall be carried into effect, that they shall be enforced. *State v. McPhail*, 180 So. 387, 389 (Miss. 1938).

Brief of Governor Barbour, 2006 WL 4673866, at*26 (Miss. 2006)(Corlew, J.).  Being so moved, the Supreme Court concluded that "the Governor is under a **solemn duty** to act in order to assure faithful execution of our laws." *Hood v. Barbour*, 958 So.2d 790, 804 (Miss. 2007)(emphasis supplied).

consideration of state law (such as suits against a city or county) the Fifth Circuit and other courts have held that a violation of state law does not give rise to a violation of the substantive due process, procedural due process, or equal protection doctrines. *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 235-236 (5th Cir.2012)("the fact that a government actor's actions might be illegal under state or local law does not mean that they are irrational for purposes of the Equal Protection Clause."); *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996)("violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment," for converting "alleged violations of state law into federal ... due process claims improperly bootstraps state law into the Constitution"); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir.1988)(under substantive due process, "violation of state law is not itself the violation of the Constitution ... [a] state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules.").

## II.     The "right to contract" and the Due Process Clause.

"The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest. Without such an interest, no right to due process accrues." *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009). BCBS argues that any State requirement that it contract with a provider violates its "freedom of contract" protected by the Due Process Clause.  BCBS's two cases are unpersuasive when compared with the contrary authority.  *See, e.g., Chicago Bd. of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 744-45 (7th Cir. 1987)("plaintiffs have brought their case

3

in the wrong era. Chicago's new ordinance indeed strikes at the heart of freedom of contract, but the Supreme Court's current conception of substantive due process does not embrace freedom of contract"); *cf. CIGNA Healthplan of Louisiana, Inc. v. State, ex rel. Ieyoub*, 883 F. Supp. 94, 100 (M.D. La. 1995) (declining to decide whether insurance company had "liberty or property interest" to exclude providers because statute was unquestionably "rationally related to the legitimate and asserted State purpose of assuring patient access to quality health care without restricting the freedom to choose one's provider").

For example, BCBS cited *Mertik v. Blalock*, 983 F.2d 1353, 1360 (6th Cir. 1993), which found a "right to contract" created by the Ohio Constitution.  An appeal to state law is exceptionally unhelpful for BCBS.  Since the enactment of the Patient Protection Act of 1995, the burden has been on BCBS to "demonstrate that its provider network has providers of sufficient number throughout the service area to assure reasonable access to care with minimum inconvenience by plan enrollees." Miss. Code. Ann. § 83-41-409(b).  Mississippi law, which defines the relevant property right, does not give BCBS a right to categorically exclude providers from its network if the exclusion creates even a **"minimum inconvenience"** to enrollees.

Finally, BCBS's admission that "the Legislature (and by delegation the Insurance Commissioner) has the right to regulate insurance contacts" to action regarding its network of providers is fatal.  Rebuttal at 3.  If the Legislature or Commissioner may require BCBS to have a sufficient number providers in-network, then the underlying act itself does not violation any constitutional right of BCBS.  Instead, BCBS is left to argue that the Governor lacks authority *under state law* to take this action or to enforce

4

Section 83-41-409. Which state actor has authority requisite under state law is not a federal constitutional question and is barred by the Eleventh Amendment. *See supra* Section I.

### III. Substantive due process, shocks the conscious, and the Eleventh Amendment.

The crux of BCBS's argument is now clearer. BCBS insisted at the hearing that the Governor's Executive Order is wrong because he allegedly misapplied state law (including Section 83-41-409(b)) and his factual conclusions about access to care are not sufficiently supported. However, being wrong under State law does not violate the Due Process Clause. First, the Eleventh Amendment prohibits federal courts from correcting errors of state law. *See supra* Section I. Legal or factual errors committed in enforcing state law are reviewed by the state courts.

Second, to state a substantive due process claim regarding alleged "**executive abuse of power**" requires conduct that "shocks the conscience," violates the "decencies of civilized conduct," or interferes with rights "implicit in the concept of ordered liberty." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 591 (5th Cir. 1999)(emphasis supplied). As this Court itself has explained:

> The Due Process Clause does not authorize federal courts to sit as appellate courts to review the correctness of a state agency's decision. The Fifth Circuit, in *FM Properties Operating Co. []*, explained that wrongly interpreting or administering state law does not create a federal constitutional claim under substantive due process. A legally or factually incorrect decision, or even an act of negligence, is insufficient for a substantive due process claim. []  In rejecting attempts to expand the reach of the substantive due process doctrine, the Fifth Circuit has cautioned that "[t]he Supreme Court's discussions of abusive executive action have repeatedly emphasized that 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.' " *McClendon*, 305 F.3d at 326 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 140 L.Ed.2d 1043, 118 S.Ct. 1708 (1998)). Simply arbitrary

5

> conduct, standing alone, is insufficient; the conduct must be sufficiently arbitrary as to "shock the conscience." *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir.2007) (rejecting substantive due process claim when acts were arbitrary but not so arbitrary so as to "shock the conscience.").
>
> * * *
>
> Brown, LLC contends that (a) MDAH's denial of its 2007 permit application was "contrary to the evidence" and (b) that MDAH incorrectly decided that there was no 2006 permit. These contentions, even if true, do not evince the "most egregious of official conduct" or that which "shocks the conscience" or "violates the decencies of civilized conduct." The allegations in the complaint are nothing more than routine allegations regarding the correctness of an agency decision. Brown, LLC has failed to state a substantive due process claim. *See FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996) ("**the due process clause does not require a state to implement its own law correctly, nor does the Constitution insist that a local government be right.**")

*Worley Brown, LLC v. Mississippi Dep't of Archives & History*, 2012 WL 1424398, at *15 (S.D. Miss. 2012)(emphasis supplied)(Wingate, J.); *see also Licari v. Ferruzzi*, 22 F.3d 344, 350 (1st Cir. 1994)(state officials do "not transgress constitutional due process requirements merely by making decisions 'for erroneous reasons' or by making 'demands which arguably exceed its authority under the relevant state statutes'"). BCBS's challenge to the correctness of the Executive Order lies exclusively in state court.

**IV.     Substantive due process and rational basis review.**

If BCBS is challenging the laws of the State which require an insurer to contract with a sufficient number of providers to "assure reasonable access to care with minimum inconvenience by plan enrollees," that challenge fails under the rational basis test.  *See* Miss. Code. Ann. § 83-41-409(b).  BCBS contends that rational basis review imposes a significant hurdle to State action, claiming that the Supreme Court has struck down 20 laws since 1970 utilizing rational basis.  This is slight-of-hand. Rational basis, as part of equal protection analysis, has been used to strike down laws which arbitrarily

classify and discriminate against categories of people.² In contrast, successful challenges to *economic regulation* under substantive due process (rational basis) are virtually non-existent and exceptionally difficult. "The Supreme Court has not invalidated any economic regulation on substantive due process grounds since 1938, and we have remarked that it 'may be right' that 'merely 'economic' regulations can never flunk the test of rationality.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 806 (7th Cir. 1999).

Under rational basis, the State's laws are "accorded a **strong presumption of validity** and must be upheld … if there is **any reasonably conceivable state of facts** that could provide a rational basis for [it]." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 139 (5th Cir.2009)(emphasis supplied); *FM Properties Operating Co.,* 93 F.3d at 175("[T]he range of rational grounds is not restricted to those articulated at the time the [government] made its decision, but encompasses all conceivable bases, actual or hypothesized."). Here, the protection of access to health care is a legitimate government interest.³ And, it cannot be credibly

---

² Each case cited by BCBS involved striking down laws that discriminated against homosexuals per the Equal Protection Clause.

³ *See Cal. State Auto. Ins. Ass'n v. Maloney*, 341 U.S. 105, 109-10 (1951)(requiring insurers to contract with poor risk drivers is constitutional; "the power of the state is broad enough to take over the whole business, leaving no part for private enterprise, [and] the state may therefore hold its hand on condition that local needs be serviced by the business."); *Osborn v. Ozlin*, 310 U.S. 53, 65-66 (1940)(states "may fix insurance rates . . . [and] curtail drastically the area of free contract"); *Vesta Fire Ins. Corp. v. State of Fla.*, 141 F.3d 1427, 1430 n.5 (11th Cir. 1998)(summarily rejecting insurers substantive due process claim in a footnote); *Blue Cross & Blue Shield of Michigan v. Milliken*, 367 N.W.2d 1, 21-22 (1985) (state has "significant and legitimate" interest in "ensuring all subscribers reasonable access to, and reasonable cost and quality of, health care services. The promotion of the health and general welfare of citizens is a matter of unquestionable state concern.").

argued that there is no "reasonably conceivable state of facts," either "actual or hypothesized," supporting the conclusion that reinstatement of the ten HMA hospitals into the BCBS network is "rationally related" to the legitimate government of access to health care. *See CIGNA Healthplan of Louisiana, Inc.*, 883 F. Supp. at 99-100(requirement that insurer contract with providers was "rationally related to the legitimate and asserted State purpose of assuring patient access to quality health care without restricting the freedom to choose one's provider").

## V.     Procedural due process and Eleventh Amendment.

Because BCBS's procedural due process argument relied on the alleged failure to provide a hearing required by state statute, the State noted that "failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process." *Giovanni v. Lynn*, 48 F.3d 908, 912-13 (5th Cir. 1995).  BCBS now concedes that to be correct, but argues the rights under state and federal law "may be coextensive."  While possibly true, BCBS provides no authority that the specific hearing allegedly required under state law is, in fact, coextensive with federal due process.  BCBS is simply again seeking to enforce state law in federal court.

BCBS also argued that the pre-action hearing before the Legislature was insufficient because there was no cross-examination. "The essential elements of due process are notice and an opportunity to respond," and "informal procedures will suffice." *Soderstrum v. Town of Grand Isle*, 925 F.2d 135, 138 (5th Cir. 1991).  A pre-deprivation hearing need not be extensive, merely "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination" *Memphis Light, Gas, and Water Div. v. Craft*, 436 U.S. 1, 16 (1978).

8

Moreover, no pre-action hearing was constitutionally necessary as "not even an informal hearing ... must precede a deprivation undertaken to protect the public safety." *Caine v. Hardy*, 943 F.2d 1406, 1412 (5th Cir.1991). And, the provision for a post-action hearing before the Commissioner satisfies due process even if no pre-action hearing occured. *See Parratt v. Taylor*, 451 U.S. 527, 539 (1980)("necessity of quick action by the State ... when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process").

**VI.     Contract Clause, legislative action, and the expired contract.**

BCBS now concedes that the Contract Clause applies only to the exercise of legislative authority, *i.e.,* the enactment of law, and not to the acts of executive or administrative officials. U.S. Const. Art. I, § 10 ("no state shall ... pass any ... law...."); *New Orleans Waterworks Co. v. Louisiana Sugar-Ref. Co.*, 125 U.S. 18, 30 (1888)(applies to legislative authority, not acts of "administrative or executive boards or officers"); *Perano v. Township of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) ("must rest on an exercise of legislative power, not the acts of administrative or executive boards or officers"). BCBS has argued that the Governor was usurping the executive authority of the Commissioner. Now, misreading *Welch v. Brown*, BCBS reverses course and argues the Governor was acting in a legislative capacity so as to implicate the Contract Clause. In *Welch*, a state law delegated "legislative authority" to the city emergency manager to "unilaterally modify already-existing contracts, to fire elected municipal officials, and to repeal and put into place new municipal ordinances." 935 F.Supp.2 875 (E.D. Mich. 2013). *Welch* emphasized that the Manager was not simply

9

"enforc[ing] already-existing laws." *Id*. Here, the Governor is enforcing existing state law and BCBS has not alleged that any statue violates the Contract Clause. *See Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, 2013 WL 4811958 (N.D.N.Y. 2013) ("the Contract Clause is only violated when a law of the State impairs an obligation of a contract"). An executive official's act of interpreting and applying state law is not a legislative act and is not within the purview of the Contract Clause. *See Fleming v. Fleming*, 264 U.S. 29, 30–32 (1924)(no Contract Clause violation based on the alleged reversal in interpretation of an Iowa state statute, even where the party had relied on the earlier interpretation).; *W. 95 Hous. Corp. v. New York City Dep't of Hous. Pres. & Dev.*, 2001 WL 664628 (S.D.N.Y. June 12, 2001)("enforcement of broadly (and allegedly unlawfully) interpreted . . . regulations, . . . are executive 'acts of administrative ... officers,' and . . . cannot form the basis of a claim pursuant to the Contracts Clause")(citing *New Orleans Waterworks*).

 The Fifth Circuit's holdings differ from *Welch*'s analysis. In *Frazier*, the county board of education took executive action to terminate *existing* leases based on the board's "new interpretation of preexisting authority – namely the Mississippi Constitution." *Frazier v. Lowndes Cnty., Miss., Bd. of Educ.*, 710 F.2d 1097, 1099 (5th Cir. 1983). In other words, the board reviewed the law and concluded that it had authority to unilaterally terminate leases. The Fifth Circuit rejected a Contract Clause claim because the board was acting as an executive in interpreting and applying existing law. *Id*. "Here it is, of course, not the Legislature which has attempted to affect the rights which plaintiff and interveners contend have become vested in them by their renewal leases. . . ." *Id*.; *see also Smith v. Sorensen,* 748 F.2d 427, 436-37 (8th Cir.

1984) ("administrative acts" applying state laws to "particular cases" not implicate the Contract Clause).

Separately, BCBS's argument fails for multiple other grounds. First, without an existing and valid contract to be impaired, there is no Contract Clause claim. BCBS's claim does not "get past step one" because its contracts expired 52 days prior to the Executive Order. *See Am. Fed'n of State, Cnty. & Mun. Employees v. Hot Spring Cnty.*, 362 F. Supp. 2d 1035, 1042 (W.D. Ark. 2004)(claim of that statute impaired a contract that had already expired does not "get past step one"); *Univ. of Hawaii Prof'l Assembly v. Cayetano*, 125 F. Supp. 2d 1237, 1242 (D. Haw. 2000)(same).

Second, because the Contract Clause protects only existing contracts, the Clause does not prohibit a State from regulating new contracts or requiring a person to enter into new contracts. *See Montague v. Dixie Nat. Life Ins. Co.*, 2011 WL 2294146 (D.S.C. 2011) (especially in insurance industry, Clause "does not apply to limit the ability of state and local governments to regulate the terms of future contracts; its scope only covers government interference with already existing contracts"); *Prudential Prop. & Cas. Co. v. Ins. Comm'n of S. Carolina Dep't of Ins.*, 534 F. Supp. 571, 581 (D.S.C. 1982)(same); *Insurers' Action Council, Inc. v. Markman*, 490 F. Supp. 921, 930-31 (D. Minn. 1980)(same).

**VII.  Equal Protection**.

The burden is squarely on BCBS to: (1) identify a "similarly situated" insurance company; (2) that was treated differently; and (3) for which there is no "rational basis for the difference in treatment." *See Lindquist v. City of Pasadena*, 669 F.3d 225, 233-34 (5th Cir. 2012). BCBS merely argues that (1) there are other insurance companies in

11

Mississippi and (2) the Governor has never taken any action against them. BCBS fails to identify a similarly situated insurer (who insurers the vast majority of citizens) who undertook a similar course of conduct (creating a denial of access to care crisis by summarily removing the ability of its policy holders to seek medical care at ten hospitals).

**VIII. The public interest at stake and access to health care.**

On September 1, BCBS removed all ten HMA hospitals from its network to pressure HMA to dismiss a lawsuit. *See* Trans. at 53, Ex. A. On October 21, BCBS placed four of those hospitals back in its network. Why? BCBS did not reinstate four hospitals as an act of kindness to its bitter foe HMA. BCBS realized that the total exclusion was resulting in a large scale denial of access to care that was harming the public and motivating the State to take action. *See generally*, Trans. Days before the State acted, BCBS partially reversed course and placed four of the ten hospitals back in network.[4] Now, in seeking to restrain the State from addressing the problem that BCBS created, BCBS must "clearly" establish that the public interest will not be disserved by the continued exclusion of six HMA hospitals.[5] This is a high hurdle given that the access to health care is at stake. Unless BCBS clearly convinces this Court that there is no access to care issue whatsoever, then BCBS has not established that the injunction

---

[4] Placing four hospitals back in network on October 21 leads to the question of how would BCBS be "irreparably harmed" by placing the remaining six hospitals in-network on the exact same terms as the reinstated four?

[5] The temporary duration of the Executive Order is important. The hospitals remain in network only until the Commissioner completes his investigation and provides his report to the Governor (in no event longer than sixty days). Executive Order at 5.

would not disserve the public interest. In truth, access to care issues continue and weigh heavily against the injunction. *Cf.* Restraining Order, *Vinson v. Barbour*, No.3:04-cv-784WS (Nov. 1, 2004)(temporarily prohibiting Medicaid from terminating the PLADS class of beneficiaries and noting that a loss of access to care was contrary to public interest). The Court should err on the side of extreme caution when the continued access to care for thousands of Mississippians is at issue.

**RESPECTFULLY SUBMITTED**, this 26th day of October, 2013

                      PHIL BRYANT, GOVERNOR OF
                      THE STATE OF MISSISSIPPI

            BY: */s/ Harold E. Pizzetta, III*
                HAROLD E. PIZZETTA, III (MSB No. 99867)

Harold E. Pizzetta, III
Assistant Attorney General
Counsel for the State Defendants
Civil Litigation Division
Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-5654
Email: hpizz@ago.state.ms.us

**CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing document has been filed electronically with the Clerk of Court and thereby served on the following persons:

R. David Kaufman, Esq.
Cheri D. Green, Esq.
Brunini, Grantham, Grower & Hewes, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205

This the 26th day of October, 2013.

             */s/ Harold E. Pizzetta, III*
             Harold E. Pizzetta, III